IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:23CR223-1 |
| | ) | |
| CHAUNCEY ALEXANDER HOLLIS | ) | |

## ORDER

This matter is before the Court on the Government's motion to revoke conditions of Defendant's pre-trial release. (Docket Entry 46.) The Government asserts that Defendant Chauncey Alexander Hollis ("Defendant") has committed several offenses in violation of his present release conditions. The case was thereafter brought before the Court for a hearing pursuant to 18 U.S.C. § 3148. At the hearing, the undersigned ordered that Defendant be detained pending further proceedings in this matter.

### I. BACKGROUND

On or about June 26, 2023, a federal grand jury indicted Defendant on one count of conspiracy to commit wire fraud and theft of government property, in violation of 18 U.S.C. § 371. (*See* Docket Entry 1.) Hearings were held in the matter, and at their conclusion, the Court orally ordered Defendant's release as it was determined that there were conditions that would reasonably assure the appearance of Defendant for further proceedings and the safety of the community. (Minute Entries dated 2/20/2024, 2/27/2024, 3/4/2024; Docket Entries 29, 30.)[1] Defendant thereafter entered a plea agreement, which the Court accepted, and

---

[1] The Government withdrew its motion to detain Defendant.

Defendant was ordered to remain at large under the terms and conditions of release. (*See* Docket Entry 33; Minute Entry dated 3/26/2024.)

On July 5, 2024, the United States Probation Office ("USPO") issued a Notice of Apparent Violation of Conditions of Release, which alleged that Defendant tested positive for cocaine on May 31, 2024. (Docket Entry 36.) Consistent with the USPO's recommendation, the Court ordered that Defendant remain under the same conditions of release. (Text Order dated 7/8/2024.) On July 25, 2024, the USPO issued a second Notice of Apparent Violation of Conditions of Release, which alleged that Defendant was a subject of interest in a hit and run that occurred on May 24, 2024, and that Defendant was arrested on July 20, 2024, for misdemeanor driving under the influence. (Docket Entry 39.) The undersigned held a hearing and ordered that Defendant remain under conditions of release and be restricted to his local residence until his sentencing the following day. (Minute Entry dated 8/1/2024; Text Order dated 8/1/2024.) Defendant's sentencing was ultimately continued, and Defendant remained under conditions of release, with the additional requirement that he be tested for prohibited substances on a weekly basis. (*See* Minute Entry dated 8/2/2024; Text Order dated 9/10/2024.) On August 26, 2024, the USPO issued a third Notice of Apparent Violation of Conditions of Release, which alleged, among other things, that Defendant tested positive for cocaine on August 8, 2024. (Docket Entry 45.) Accordingly, the Government moved to revoke Defendant's conditions of pre-trial release. (Docket Entry 46.)

A revocation hearing was held in this matter on October 3, 2024. At the revocation hearing, United States Probation Officer Sonya Schroeder first set forth a summary of

Defendant's adjustment to supervision.[2]  Defendant became a subject of interest for a hit and run occurring on May 24, 2024, involving a vehicle that Defendant had rented and that sustained over $10,000 in damages.  The investigation remains pending.  On May 31, 2024, Defendant tested positive for cocaine.  He denied use.  The results were verified by lab testing.  On July 20, 2024, Defendant was arrested for driving under the influence of alcohol.  He has not yet been convicted for that offense.  As previously stated, Defendant was subject to additional conditions, including weekly drug testing.  (*See* Text Order dated 8/1/2024; Minute Entry dated 8/2/2024.)

As to the latest Notice of Apparent Violation (Docket Entry 45), Officer Schroeder testified that on August 8, 2024, Defendant again tested positive for cocaine.  The results were again verified by lab testing.  He again denied use, claiming that the positive test must have resulted from his consumption of energy drinks or male enhancement supplements.  The laboratory used by the probation office advised that no over-the-counter substance or prescribed medication would produce the positive cocaine test.  Officer Schroeder testified that at Defendant's sentencing hearing,[3] he represented that he was receiving drug and alcohol treatment three times per week.  When Officer Schroeder attempted to verify that information with the supervising officer in California, she was informed that Defendant was only receiving counseling once per month.

---

[2] Officer Schroeder is the local officer assigned to this matter; Defendant is being supervised out of the Central District of California.

[3] Defendant's sentencing hearing has been continued to October 31, 2024.  (*See* Docket Entry 53.)

Officer Schroeder also testified that photographs of Defendant were posted on Defendant's Facebook account during his pre-trial release. The photographs depicted Defendant making gang signs with his hands, drinking alcohol, appearing driving after his license was suspended, holding cash with what appeared to be marijuana, and wearing a ballistic vest while mixing an unknown substance. Officer Schroeder spoke with an expert in the probation office who identified the gang signs as associated with the Bloods. Officer Schroeder also testified that Defendant works in the rap industry but is unaware if Defendant's Facebook postings are related to his work. The supervising officer informed Officer Schroeder that Defendant has been combative at times, has used explicit language in the office, and is difficult to supervise. Defendant has been convicted of previous drug offenses. Officer Schroeder believes that Defendant should be detained considering the continued violations.

Defendant testified on his own behalf. Defendant stated that he has never used cocaine. He was surprised by his positive cocaine test, believed the probation officer set him up, and Defendant even hired a private lab to verify the results. Defendant testified that the private lab also returned a positive test and told him that it could have been a male enhancement that caused the result. However, two women later told Defendant that they had taken cocaine (without Defendant's knowledge) which remained in the women's mouths when they performed oral sex on him. One of those women agreed to sign an affidavit, which the Court admitted.[4] Defendant believed this incident—which occurred at least 10 times—was the cause of his positive cocaine tests.

---

[4] The affidavit from Tonalaya Green indicates that she would have "bumps of cocaine" before engaging in sexual activities with Defendant and her drug use was without Defendant's knowledge.

Defendant denies verbal abuse towards the probation officer, except using profanity when stating that he never did cocaine. Regarding substance abuse treatment, Defendant states that he was participating in group treatment online three times a week.[5] Regarding the hit and run on May 24, 2024, Defendant states that he was at a boxing event in Pasadena, California when it occurred. He took videos while at the event. Defendant states that he turned in the rented vehicle to a mobile detailer who then took it for a "joyride." Finally, Defendant states that the Facebook photographs were shots from music videos and movie sets.[6] Defendant was paid to make these sorts of videos, and Defendant's agent/manager posted pictures from the videos on social media to promote them. The hand symbols Defendant made were not intended to be gang signs but people he was portraying. Defendant states that one of the photos showed him holding CBD, not marijuana, which he had been paid to promote. Another photo depicted him holding a can of Old English alcohol, which he did not drink—Defendant doubted there was even alcohol in it. While some of the photos were intended to make him look like he was smoking marijuana or mixing cocaine, Defendant states that these are photos from movie/video sets.[7]

---

[5] Defendant submitted correspondence regarding his participation in a treatment program, some which included a program that Defendant was physically present. He also submitted a picture of himself during booking. Defendant also submitted a contract related to his work projects.

[6] The Government questioned Defendant about the photos, which were submitted to the Court.

[7] Defendant also stated during his testimony that he desires to withdraw his plea agreement in light of his actual innocence.

5

After considering the parties' arguments and evidence presented, at the end of the revocation hearing, the Court orally ordered Defendant's detention pending disposition of this case.

## II. DISCUSSION

A person who has been released pursuant to 18 U.S.C. § 3142, and "who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). Once the government initiates a proceeding, the judicial officer that ordered the release can issue an arrest warrant for the arrest of the alleged violator. The alleged violator is brought before the judicial officer. 18 U.S.C. § 3148(b). An order of revocation and detention is entered after a hearing if a judicial officer determines that there is:

> (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
> (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that—
>
> > (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> >
> > (B) the person is unlikely to abide by any condition or combination of conditions of release.

*Id.* § 3148(b)(1)-(2).

First, based upon the evidence presented at the hearing, the Court finds that there is clear and convincing evidence that Defendant violated the conditions of his release. As stated above, Defendant tested positive for cocaine which was confirmed by lab testing. His

6

explanation for the positive test, which essentially points to lack of knowledge, is unpersuasive. *See United States v. Hope*, No. 1:17 CR 95-2, 2018 WL 490552, at *1-2 (W.D.N.C. Jan. 19, 2018) (unpublished) (finding, among other things, clear and convincing evidence of cocaine use in violation of pretrial release conditions based on a positive drug test, despite defendant's claim that he had taken cocaine unintentionally). Thus, there is clear and convincing evidence that Defendant violated the conditions of his release.

Next, having considered the information presented, the Court finds that Defendant is unlikely to abide by any condition or combination of conditions of release. This Court has already given Defendant multiple chances to conform his behavior to his conditions of release, and he has repeatedly failed to do so, demonstrating an inability to comply with the rules of this Court. Additionally, there is no condition or combination of conditions of release that will assure Defendant will not flee or pose a danger to the safety of any other person or the community. Therefore, the Court will enter an order of revocation and detention.

### III. CONCLUSION

For the reasons stated herein, the Government's motion to revoke conditions of Defendant's pre-trial release (Docket Entry 46) is **GRANTED** and Defendant shall be detained pending further proceedings in this matter.

/s/ Joe L. Webster<br>
United States Magistrate Judge

October 10, 2024
Durham, North Carolina